**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Caracofe,<br><br>    Plaintiff,<br>vs.<br><br>Drake Kryterion, Incorporated,<br><br>    Defendant. | No. CV-18-02595-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendant's Motion for Summary Judgment (Doc. 54) and Motion to Preclude Use of Information Conveyed During Settlement Negotiations (Doc. 35).[1]

**I. Background**[2]

Gary Caracofe ("Plaintiff") is currently a sixty-year-old employee of Drake Kryterion, Inc., d/b/a/ Kryterion Global Testing Solutions ("Kryterion" or "Defendant"). (Doc. 58 at 2) Defendant hired Plaintiff as a Program Manager in October of 2011. (Doc. 58 at 2) Plaintiff remained in that role for almost seven years and received one raise. (Doc. 58 at 2) In January of 2018, William Wilkins interviewed Plaintiff for a Client Services Manager position. (Doc. 59 at 4-5) Plaintiff and five other candidates were interviewed,

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] For purposes of resolving the Motion for Summary Judgment, the following background is offered for context and based only on undisputed facts or, where there is a dispute, the non-moving party's version of events.

but Plaintiff did not make it past the first interview. (Doc. 59 at 4-5) Mr. Wilkins ultimately chose to promote Alison Swauger, who was forty-four years old at the time. (Doc. 59 at 5) Around the same time, Defendant created a new position, Business Analyst, and promoted an employee who was twenty-seven years old. (Doc. 54 at 4)

On January 22, 2018, Plaintiff sent an email to Mr. Wilkins expressing concerns about his lack of promotion and pay increase. (Doc. 55-2 at 26-30) Mr. Wilkins responded to the email, explaining that promotions at Kryterion are dependent on several factors and that he could not simply give Plaintiff a promotion. (Doc. 55-2 at 26-30) Mr. Wilkins also forwarded the message to Plaintiff's new supervisor—Ms. Swauger. (Docs. 55-2 at 26-30; 59 at 13) After sending the email, Plaintiff began to perceive a change in the attitude of Mr. Wilkins and Ms. Swauger. (Doc. 58 at 6)

A few months later, on June 1, 2018, Plaintiff and Ms. Swauger were scheduled to conduct a client call (the "June 1 call"). (Doc. 58 at 7) At the last minute, Ms. Swauger informed Plaintiff that she would not participate in the call. (Doc. 58 at 7) The call went poorly, and Ms. Swauger issued a disciplinary citation to Plaintiff on June 13, 2018. (Doc. 58 at 7; 55-3 at 18) As part of the citation, Defendant created a performance improvement plan ("PIP"), which required Plaintiff to attend weekly one-on-one meetings, create meeting agendas for his client meetings, and have Ms. Swauger as an optional attendee on all his client meetings. (Doc. 55-3 at 18)

On June 14, 2018, Plaintiff submitted an age discrimination complaint to the human resources manager, Janet Manley. (Doc. 59 at 8) Ms. Manley conducted an internal investigation of Plaintiff's allegations but concluded that no discrimination had occurred. (Doc. 59 at 8) After the investigation, Ms. Manley sent Plaintiff an email outlining four employment options, including eight "action steps" Plaintiff needed to meet in order to stay in his current position or achieve a promotion and pay raise (the "July action plan"). (Doc. 55-7 at 2-7) Alternatively, Plaintiff had the option of moving to a different department outside of Ms. Swauger's supervision. (Doc. 55-7 at 2-7) Finding that he could not realistically meet the eight actions steps, Plaintiff chose to move positions—even

though he considered the new position to be a demotion. (Docs. 55-7 at 2-7; 58 at 8)

On July 16, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 59 at 10) The EEOC sent Plaintiff a right to sue letter on August 6, 2018. (Doc. 55-7 at 21) On August 16, 2018, Plaintiff filed the Complaint in this case, alleging three causes of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*: age discrimination (Count I); retaliation (Count II); and hostile work environment (Count III). (Doc. 1) On September 21, 2018, Defendant answered the Complaint. (Doc. 12)

On February 26, 2019, the parties engaged in a settlement conference. (Doc. 31) In addition to the parties and their counsel, Regina Caracofe—Plaintiff's spouse and another Kryterion employee—attended the settlement conference. (Doc. 35 at 3) The parties failed to reach a settlement agreement. (Doc. 31) Subsequently, Plaintiff's wife filed a charge of discrimination with the EEOC. (Doc. 37 at 7) On May 9, 2019, Defendant filed the Motion to Preclude Use of Information Conveyed During Settlement Negotiations, requesting that the Court bar Mrs. Caracofe from using confidential information stated at Plaintiff's settlement conference in her separate EEOC charge of discrimination. (Doc. 35) Plaintiff responded on May 23, 2019. (Doc. 39)

Defendant then filed the Motion for Summary Judgment on August 9, 2019. (Doc. 54) Plaintiff filed a response on September 9, 2019, and Defendant replied on September 24, 2019. (Docs. 58, 66) Both motions are addressed below.

**II. Discussion**

    **A. Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a*); see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute

of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323 (citations omitted). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id*. Summary judgment is, therefore, proper if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Id.*

The ADEA makes it unlawful for an employer to discriminate because of an individual's age. 29 U.S.C. § 623(a)(1). Generally, the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[3] applies to a plaintiff who alleges retaliatory conduct by his or her employer. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). The framework is also appropriate when a plaintiff attempts to establish a claim of discrimination by using only circumstantial evidence. *Id.* at 141. The Court finds that, in addition to the retaliation claim, Plaintiff asserts circumstantial evidence to support his other claims of discrimination. Therefore, the Court will apply *McDonnell Douglas* to analyze whether summary judgment is appropriate for each of Plaintiff's discrimination claims. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207-08 (9th Cir. 2008) (evaluating an ADEA claim based on circumstantial evidence of discrimination under *McDonnell Douglas*).

---

[3] Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of discrimination. *Reeves*, 530 U.S. at 142-43. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Id.* If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer is pretext for the unlawful discrimination. *Id.*

1.   Age Discrimination

In a failure-to-promote case, a plaintiff may establish a prima facie case by showing he was: (1) at least forty years old, (2) qualified for the promotion, (3) denied the promotion, and (4) the promotion was given to a substantially younger person. *Shelley v. Geren,* 666 F.3d 599, 608 (9th Cir. 2012). Plaintiff asserts that he was overlooked for two promotions—Client Services Manager and Business Analyst.[4] (Doc. 58 at 4)

Regarding the Client Services Manager position, the Court finds that Plaintiff has established a prima facie claim. Even so, the Court finds that Plaintiff fails to offer sufficient evidence rebutting Defendant's legitimate, non-discriminatory reason for hiring Ms. Swauger over Plaintiff. Defendant asserts that Plaintiff interviewed poorly and Ms. Swauger possessed better qualifications than Plaintiff. (Docs. 54 at 4-5; 59-1 at 28-29) In response, Plaintiff asserts that Mr. Wilkins only used subjective hiring criteria when making the selection. (Doc. 59 at 5) However, such an argument on its own is insufficient to survive summary judgment under the *McDonnell Douglas* framework. *See Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980) (explaining that when an employer offers a specific explanation for an employment decision that "is reasonably attributable to an honest even though partially subjective evaluation of [an employee's] qualifications, no inference of discrimination can be drawn"). The record confirms that Defendant required at least some objective qualifications for the Client Services Manager position. (Doc. 55 at 2; 55-7 at 28) Deciding not to further consider Plaintiff because he interviewed poorly was within Defendant's discretion, and Plaintiff cannot show pretext merely by disagreeing with the correctness of Defendant's judgment. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) ("[E]vidence must be both specific and substantial to

---

[4] Plaintiff also asserts that in 2017 he was overlooked for a third position, Lead Program Manager. (Doc. 58 at 3) However, the right to sue letter issued by the EEOC only covers issues arising up to 300 days prior to Plaintiff's June 14, 2018 charge of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred."). Therefore, the Court does not address the Lead Program Manager position.

overcome the legitimate reasons put forth by [an employer].") (citation omitted).

Regarding the Business Analyst position, the Court finds that Plaintiff fails to establish the second element of his prima facie claim. Defendant asserts that Plaintiff was not considered for the position because he did not have experience working with the program software "Salesforce," which is an essential part of the Business Analyst position. (Doc. 59-1 at 31) Defendant also asserts that, at the time the position was created, it needed an analyst immediately, and the person it promoted filled this "desperate need" for someone with an analyst background. (Doc. 66 at 6)

Plaintiff argues that the job was specifically tailored for another employee, so it is unclear whether he was qualified for the position. (Doc. 58 at 12) Plaintiff also asserts that Defendant never gave him an opportunity to demonstrate that he possessed the necessary skills for the position. (Doc. 59 at 6) Plaintiff never asserts, however, that he does in fact have experience using the necessary softward and/or that he satisfies all of the other necessary requirements for the Business Analyst position. Instead, Plaintiff maintains that Defendant should have tailored a promotion to fit his skillset and professional development. (Doc. 58 at 12) Absent evidence of the necessary qualifications for the position as it exists—not as Plaintiff believes it should exist—Plaintiff cannot establish a prima facie claim under the ADEA. *See McDonnell Douglas Corp.*, 411 U.S. at 800 ("Congress did not intend . . . to guarantee a job to every person regardless of qualifications."); *see also Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact."). Therefore, summary judgment is appropriate for Count I of Plaintiff's Complaint.

2. Retaliation

In order to state a retaliation claim under the ADEA, a plaintiff must allege that: (1) he engaged in a protected activity, (2) there was an adverse employment action, and (3) a causal link existed between the protected activity and the adverse employment action. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (citation

omitted). Defendant disputes the second and third elements of Plaintiff's claim.

          a.        Adverse Employment Action

"An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (internal citation and quotation omitted). Adverse employment actions include "actions that materially affect[] compensation, terms, conditions, or privileges" of employment. *Id.* (citation omitted). Courts interpret adverse employment actions broadly. *Id.*

Plaintiff asserts that the adverse action occurred when Defendant gave him essentially two options in the July 2018 action plan: either meet eight additional performance objectives or be demoted to a different position.[5] (Doc. 58 at 15)

In the July action plan, Defendant gave Plaintiff four opportunities regarding his continued employment: (1) improve his current performance to receive a promotion and fifteen-percent raise in forty-five days; (2) remain in his current position with the current workload and receive a performance evaluation after thirty days for a possible merit raise; (3) remain in his current position but with a reallocation of his workload; or (4) transition to an alternative role in the Client Operations Support Department. (Doc. 55-7 at 2-4) With all four options, Defendant gave Plaintiff eight "action steps" or performance objectives that established guidelines and expectations for improvement in Plaintiff's work performance going forward. (Doc. 55-7 at 2-4) The eight performance objectives included: (1) reviewing the June 1 call and submitting a written report listing five areas of improvement for communicating with the client going forward; (2) completing any and all

---

[5] Plaintiff also argues that his January 22, 2018 email constituted a protected activity. (Doc. 58 at 14) In the email, however, Plaintiff never mentioned age or that he believed any unlawful discrimination had occurred because of his age. Asking for a promotion or pay increase alone does not constitute a protected activity. *See Coleman v. Home Health Res. Inc.*, 269 F.Supp.3d 935, 942 (D. Ariz. 2017) ("As a matter of law, asking for a pay raise is not protected activity [under the ADEA].").

training assigned by a manager; (3) preparing a written proposal each time a client issue arose—to be approved by Ms. Swauger; (4) demonstrating four to five instances of Plaintiff initiating the development of junior staff members; (5) creating a written report outlining each client's business and areas where Plaintiff was being proactive about servicing the client; (6) ensuring all of Plaintiff's calls, webinars, meetings, and client conferences were made on a recorded line; (7) inviting Ms. Swauger to all external and internal client meetings; and (8) being available for weekly one-on-one meetings and ensuring that the "spirit of the agreement" was upheld. (Doc. 55-7 at 3-4)

Because the fourth employment option was a change in work duties, many of the eight performance objectives did not apply to that option. (Doc. 54 at 6) Plaintiff argues that he was forced to choose the fourth option because he could not realistically meet the eight performance objectives as required by the first three options. (Doc. 59 at 9) Plaintiff further argues that his younger co-workers were never required to meet the eight additional steps in order to receive a promotion or pay increase. (Doc. 58 at 8)

Although some courts in this district have determined that an employer's performance improvement plan does not by itself constitute an adverse employment action, other courts have found that increased supervision implemented closely after a plaintiff engaged in a protected activity may be considered an adverse employment action. *Compare Starling v. Banner Health*, No. CV-16-00708-PHX-NVW, 2018 WL 397236, at *11 (D. Ariz. Jan. 12, 2018) (dismissing a plaintiff's ADEA-retaliation claim after concluding that placing an employee on a PIP did not constitute an adverse action), *with Spina v. Maricopa Cty. Dep't of Transp.*, No. CV 05-0712-PHX-SMM, 2010 WL 457507, at *12 (D. Ariz. Feb. 5, 2010) (denying summary judgment where a plaintiff alleged retaliation after the filing of an EEOC complaint when the employer increased the supervision of the plaintiff, which included giving specific instructions on how the plaintiff could improve her work and reviewing her work product more carefully).

Defendant maintains that the July action plan was not an adverse employment action because it had already implemented three performance expectations for Plaintiff in the June

8

PIP—the July request was just a reiteration of that PIP. (Doc. 54 at 14) Defendant also asserts that the option to change departments could not be an adverse employment action because Plaintiff received the same pay. (Doc. 54 at 14) In viewing the evidence in the light most favorable to Plaintiff, however, the Court does not agree. The additional performance expectations issued in the July action plan were not issued as a formal PIP—as opposed to the three performance expectations issued in the June PIP. In addition, an "undesirable reassignment" may be considered an adverse employment action. *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999). Plaintiff maintains that he moved to another department because he felt that it was his only realistic option. (Doc. 59 at 9) The Court concludes that a reasonable jury could find that the July action plan was an adverse employment action because it only gave Plaintiff the option of having substantially increased supervision in his work or an undesirable reassignment.

b.   Causal Link

To demonstrate a causal link, an ADEA plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Coleman,* 269 F.Supp.3d at 945 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). Proximity of time between a protected activity and an adverse employment action may support an inference of causation. *Passantino v. Johnson & Johnson Consumer Prods. Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). A court must look to all of the surrounding circumstances to determine whether to draw an inference of causation. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

Here, Plaintiff sent his complaint to human resources in June and Defendant sent the action plan in July. In addition to the proximity of the alleged adverse employment action, Plaintiff cites to portions of the record where Mr. Wilkins admitted to reassessing a plan to give Plaintiff a promotion after Plaintiff sent the January 2018 email complaining about his lack of progress. (Docs. 59 at 12; 59-1 at 19) Although the Court determined that the email is not considered a protected activity, such evidence is relevant as indirect proof of Defendant's intent to retaliate against Plaintiff for voicing complaints about his

9

employment. *See Spina*, 2010 WL 457507, at *16. The Court finds that such circumstances support an inference of causation in this case. Therefore, Plaintiff has sufficiently stated a prima facie claim for retaliation, and the burden shifts to Defendant to offer a non-discriminatory reason for the adverse employment action.

          c.        Non-Discriminatory Reason

Defendant argues that Plaintiff's poor work performance on the June 1 call—not his EEOC complaint—necessitated the July action plan. (Doc. 54 at 14) Because Defendant offers a non-discriminatory reason to the adverse employment action, Plaintiff must offer evidence that the reasoning is pretextual. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732 (9th Cir. 1986). To show pretext, a plaintiff is "not necessarily required to introduce evidence beyond that already offered to establish [his] prima facie case." *Id.*

Here, the record confirms that Plaintiff was issued a formal PIP on June 13, 2018 based on the June 1 call. (Doc. 55-3 at 18) The PIP required Plaintiff to attend weekly one-on-one meetings, create meeting agendas for client meetings, and have Ms. Swauger as an optional attendee on all client meetings. (Doc. 55-3 at 18) Nonetheless, it was not until after Plaintiff submitted his complaint to human resources that Defendant sent Plaintiff the four employment options in addition to the eight "action steps." (Doc. 55-7 at 2-7)

The fact that Plaintiff did not receive all eight performance objectives as a part of the June PIP, but instead after he filed his human resources complaint is itself probative of pretext. In addition, the eight performance objectives were not presented as a formal PIP in response to Plaintiff displaying poor work performance; instead, they were sent after he engaged in a protected activity. Giving Plaintiff the benefit of all reasonable inferences, the Court concludes that a reasonable jury could find that Defendant's reasoning amounts to pretext. *See Passantino*, 212 F.3d at 507 ("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."). Therefore, the Court will deny summary judgment for Count

II of Plaintiff's Complaint.[6]

### 3. Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must show: (1) he is a member of the class protected by the ADEA; (2) he was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) the objectionable behavior was both subjectively and objectively offensive, such that a reasonable person would find it hostile or abusive; (6) and the plaintiff found it hostile or abusive. *Vroom v. Johnson*, No. CV-14-02463-PHX-JAT, 2015 WL 3490086, at *4 (D. Ariz. June 3, 2015). A court must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff alleges that he suffered from a hostile work environment because Ms. Swauger intentionally avoided walking by his cubical; Ms. Swauger intentionally withdrew "critical resources" by not helping Plaintiff conduct a client meeting; and Ms. Swauger and Mr. Wilkins became "less friendly" after Plaintiff's January 2018 email. (Doc. 59 at 8) Taken as a whole, the Court does not find that these instances amount to the kind of abusive work environment actionable under the ADEA. Importantly, Plaintiff does not point to any comments or conduct made by Ms. Swauger or Mr. Wilkins that relate to his age.

Plaintiff does repeatedly refer to a disparaging comment made by Ms. Manley during her human resources investigation. (Doc. 58 at 7-8) Plaintiff argues that during their conversation Ms. Manley lost her train of thought and stated, "is this what it feels like to get old?" (Doc. 58 at 8) However, the record confirms that Ms. Swauger stated, "I was

---

[6] The Court's ruling that summary judgment is inappropriate on the retaliation claim, however, should not be seen to suggest that Plaintiff will succeed at trial.

going to say that I needed to say, and I can't remember it now. Is this what happens when we get older?" The actual statement suggests that Ms. Swauger made an innocuous comment about age while including herself as the subject of the comment. Unlike Plaintiff's assertion, the comment was not directed at Plaintiff in a disparaging way.

Although Plaintiff may have suffered unwelcome treatment at work, he fails to produce evidence to show that Defendant's actions, taken as a whole, were so pervasive as to create a hostile work environment actionable under the ADEA. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-89 (1998) (explaining that "the ordinary tribulations of the workplace" will not support a hostile work environment claim). Therefore, summary judgment is appropriated for Count III of Plaintiff's Complaint.

          4.       Damages

Defendant argues that Plaintiff should not be allowed to assert claims for compensatory, punitive, or liquidated damages in this case. (Doc. 54 at 17) Defendant asserts that compensatory and punitive damages are unavailable under the ADEA, and Plaintiff failed to present any evidence of willful conduct necessary to support a claim for liquidated damages. (Doc. 54 at 17) In response, Plaintiff asserts that he is not seeking punitive or compensatory damages. (Doc. 58 at 16) Plaintiff is seeking liquidated damages. (Doc. 58 at 16)

A court may award liquidated damages for a willful violation of the ADEA when evidence is presented that a defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (citation and quotations omitted). A plaintiff may use the same evidence to establish "[t]he degree of recklessness with which the ADEA violation was committed[] and the underlying violation itself." *Id.* at 681.

Here, Plaintiff asserts that Defendant retaliated against him for engaging in a protected activity by forcing him into an ultimatum—either endure substantially increased supervision not required of any younger employee or be moved to a new department. (Doc. 58 at 15) The Court finds that the evidence produced by Plaintiff in support of his retaliation

claim also supports an argument regarding Defendant's willfulness, and Plaintiff may proceed with his claim for liquidated damages.

### B. Settlement Negotiations

Defendant argues that Plaintiff's wife improperly disclosed confidential information discussed at the parties' February 26, 2019 settlement conference in her charge of discrimination filed with the EEOC. (Doc. 35 at 1) Defendant argues that "Mrs. Caracofe attended the settlement conference and was admonished by the Court regarding the duties of confidentiality and the prohibitions against using settlement information outside of the settlement conference itself." (Doc. 35 at 4) Defendant asserts that the Court has jurisdiction to remedy Ms. Caracofe's violations pursuant to Federal Rule of Evidence 408. (Doc. 35 at 4) In the alternative, Defendant asserts that, if Mrs. Caracofe is allowed to move forward with her EEOC charge, then Defendant should be released of its duty of confidentiality so that it may address the settlement negotiations in order to defend against Mrs. Caracofe's allegations. (Doc. 35 at 6)

In response, Plaintiff argues that his wife is not a party to this litigation, and Defendant's Motion improperly requests that the Court rule on an issue outside its discretion. (Doc. 39 at 2) Plaintiff asserts that it was Defendant's decision to make offers to Plaintiff that included his wife, even though Defendant knew Mrs. Caracofe was not a party to the action. (Doc. 39 at 2) As such, Plaintiff argues that his wife may use the information as she sees fit. (Doc. 39 at 2)

Here, the Court finds that it does not have authority under Federal Rule of Evidence 408 to bar Mrs. Caracofe—a non-party to this litigation—from using the settlement discussion in her EEOC charge of discrimination. Only a court overseeing a claim brought by Mrs. Caracofe would be able to prohibit the use of such information. *See NAACP Legal Def. Fund & Educat. Fund, Inc. v. U.S. Dep't of Justice*, 612 F.Supp. 1143, 1146 (D.D.C. 1985) ("Although the intent of FRE 408 is to foster settlement negotiations, the sole means used to effectuate that end is a limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial. It was never intended to

be a broad discovery privilege."). Nevertheless, the Court will grant Defendant's alternative request and relieve it of its duty of confidentiality. Defendant may reference the February 2019 settlement conference to the extent that it is necessary to defend against Mrs. Caracofe's allegations of discrimination.[7]

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 54) is **granted in part**.

**IT IS FURTHER ORDERED** that, finding no just reason for delay, pursuant to Federal Rule of Civil Procedure 54(b), Counts I and III are **dismissed with prejudice** and the Clerk's Office shall enter judgment accordingly. Count II remains at issue.

**IT IS FURTHER ORDERED** that the Motion to Preclude Use of Information Conveyed During Settlement Negotiations (Doc. 35) is **granted in part**. Defendant may reference the February 2019 settlement conference to the extent that is necessary to defend against Mrs. Caracofe's allegations of discrimination.

Dated this 9th day of January, 2020.

Honorable Steven P. Logan
United States District Judge

---

[7] The Court recognizes that it may hold a non-party in contempt for violation of an order when the non-party has notice of the requirements in the order and is "legally identified" with a party bound by the order. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). However, Defendant does not request that Mrs. Caracofe be held in contempt for her actions, and the Court finds that relieving Defendant of its duty of confidentially adequately resolves the issue in Defendant's Motion. Therefore, in its discretion, the Court will not issue an order to show cause or otherwise order any contempt proceedings.